**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| CLARENCE LOHRKE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-99 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| RADIUS GLOBAL SOLUTIONS LLC, | |
| Defendant. | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Clarence Lohrke is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt incurred for personal, family, or household purposes.

5.      Defendant Radius Global Solutions, LLC ("Radius") is a foreign limited liability company with its principal place of business located at 7831 Glenroy Rd Ste 250, Edina, MN 55439.

6.      Radius is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.      Radius is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8.      Radius is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9.      On or about June 13, 2019, Radius mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "First Premier Bank."  A copy of this letter is attached to this complaint as Exhibit A.

10.      Upon information and belief, the alleged debt that Radius was attempting to collect was incurred by use of a credit card, used exclusively for the purchase of personal, family, or household items.

11.      Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12.      Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13.      Upon information and belief, Exhibit A is the first written communication that Defendant sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

14.      Exhibit A includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. **Exhibit A** represents that the "Balance Due" is $1,000.26.

16. **Exhibit A** also contains the following "offers":

> Your Account(s) has been sent to us for collection. If you are unable to remit the total balance for the Account(s), we have two payment options available for you, we are not obligated to renew these offers.
>
> Option 1: Split the total balance into 3 installments over 3 consecutive months to pay in full. To fulfill this option make the following payments: month 1 $333.42; month 2 $333.42; month 3 $333.42. Your first payment is due in our office within 45 days from the date of this letter. Remaining payments are due every 30 days thereafter until paid in full. Should you fail to complete the arrangement proposed under this option any payments made will be applied to the balance due shown above.
>
> Option 2: Reduced Payment Option. Pay a onetime payment of $800.21 to resolve the above Account(s) for less than the total balance. Provided the payment made is not reversed or otherwise returned as unpaid, no further attempts will be made to collect the remaining balance. Your payment is due in our office within 45 days from the date of this letter.

17. Option 2 is confusing and misleading.

18. "Option 2" states that the consumer can make a "onetime payment of $800.21 to resolve the above Account(s) for less than the total balance. Provided the payment made is not reversed or otherwise returned as unpaid, no further attempts will be made to collect the remaining balance."

19. On the face of **Exhibit A**, it is impossible to determine whether a "onetime payment of $800.21" would actually settle the account in full. Option 2 says that the payment would "resolve" the account but goes on to say that "no further attempts will be made to *collect the remaining balance*."

20. The normal meaning of "resolving" or "settling" a debt is that the debt is permanently resolved in exchange for a payment of a portion of the alleged balance. After a consumer "settles" a debt, there is no "remaining balance."

21. The representation that there would be a "remaining balance" suggests that the payment requested would not actually fully satisfy the debt even if "no further attempts will be made to collect the remaining balance."

22. The reference to a "remaining balance" after the account has been "resolved" creates confusion as to whether the representation that "no further attempts will be made to

3

collect the remaining balance" means that the consumer would be "resolving" the account with Defendant, but that Defendant could then return the account to the creditor, who could engage another collection agency to collect the $200 difference between the "Balance Due" and the settlement amount.

23.     Even assuming the creditor would not make any further attempts to collect the debt, the question of whether there is, in fact, a "remaining balance" is material because a charged-off debt like the one referenced in <u>Exhibit A</u> continues to appear on the consumer's credit report.

24.     Indeed, where a debt has been "settled in full," the remaining balance is *zero*. *See, e.g., Molton v. Experian Info. Solutions, Inc.*, No. 02-cv-7972, 2004 U.S. Dist. LEXIS 659, at *13-14 (N.D. Ill. Jan. 21, 2004) (emphasis added) (discussing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1154-55 (11th Cir. 1991)):

> While the dispute was being settled, GMAC informed a credit reporting agency that Cahlin's account was delinquent and had been charged off by GMAC. Cahlin's credit report thus reflected a charge off with a balance due of $ 3,843.44. **After Cahlin paid $ 2,000 to GMAC's collection agency, Cahlin's credit report was changed to reflect a zero balance** – but it continued to show that there had been a charge off.

25.     Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (discussing settlement offers and observing that, "Where the FDCPA requires clarity … ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*,

4

852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments potentially violated the FDCPA), *cross motions for summary judgment denied by, Dixon v. Scott*, 2018 U.S. Dist. LEXIS 133076.

26. Plaintiff read Exhibit A.

27. Plaintiff was misled and confused by Exhibit A.

28. The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

29. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. Debt collection letters containing alleged misrepresentations of the character, amount or legal status of a debt, including misrepresentations of the amount or timing of settlement offers, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will pay the wrong amount, or make a payment toward a debt that is not owed, or even decide to file bankruptcy because the consumer is under the mistaken impression that the debt will increase rather than remain static over time. *See* 15 U.S.C. § 1692e(2)(a); *Boucher*, 880 F.3d at 368; *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim

5

failed on the merits"); *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (door hangers left at plaintiff's residence caused plaintiffs to call debt collector); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770

F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

30.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

31.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*,

2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

32.    15 U.S.C. § 1692e generally prohibits: "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

33.    15 U.S.C. § 1692e(2)(a) specifically prohibits and false representation about the character, amount, or legal status of any debt.

34.    15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## COUNT I – FDCPA

35.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

36.    "Option 2" in Exhibit A is confusing and misleading as to whether the payment stated would actually resolve the account in full or if there would be a "remaining balance" after the payment was processed.

37.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## CLASS ALLEGATIONS

38.    Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or

household purposes, (d) between January 21, 2019 and January 21, 2020, inclusive, (e) that was not returned by the postal service.

39.     The Class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of the Class.

40.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant complied with the FDCPA.

41.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

42.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

43.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

44.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  January 21, 2020

**ADEMI & O'REILLY, LLP**

By:   /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

10